UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| ELLE GRAYSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:20-cv-04221-SLD-JEH |
| SEAN C. VERYZER, | ) ) ) |
| Defendant. | ) ) |

## ORDER

Before the Court is Defendant Sean C. Veryzer's partial Motion to Dismiss, ECF No. 38. For the following reasons, the motion is DENIED.

## BACKGROUND[1]

### I. The Driver's Licenses

Plaintiff Elle Grayson was issued a driver's license by the State of Oregon under her birth name[2] on January 2, 2018. This license is set to expire in 2025. On June 3, 2019, she legally changed her name to Elle Grayson. The State of Pennsylvania issued her a driver's license under the name Elle Grayson on September 19, 2019; it expires in 2022. Plaintiff has never used any name apart from Elle Grayson and her birth name.

### II. The Traffic Stop

On January 23, 2020, Plaintiff was driving through Illinois on her way to Pennsylvania. She was using a rented car with California license plates. As she was travelling eastbound on Interstate Highway 80, she passed the squad car of Veryzer, an officer with the Illinois State

---

[1] At the motion to dismiss stage, the court "accept[s] as true all well-pleaded facts in the complaint, and draw[s] all reasonable inferences in [the plaintiff's] favor." *Pierce v. Zoetis, Inc*., 818 F.3d 274, 277 (7th Cir. 2016). Thus, the factual background is drawn from the amended complaint, ECF No. 34.
[2] Plaintiff does not specify what her birth name is.

1

Police. Veryzer activated his emergency lights and directed Plaintiff to pull over onto the highway's shoulder. He pulled in behind her.

After walking over to Plaintiff's vehicle, he requested her license and registration. She asked him to explain why he had pulled her over, and he responded that she had been driving 78 miles per hour, 8 miles per hour over the posted speed limit. Plaintiff denied that she had been driving that fast and began recording Veryzer with her cell phone. When he asked why she was recording him, she responded, "Officers are criminals." Am. Compl. 4, ECF No. 34 (quotation marks omitted). He became defensive and said,

> I'm not exactly sure *what's wrong with you* right now, and why you feel like I'm the criminal. I'm wearing a uniform and badge, and I've taken an oath, and I've served my country in the army as well as in state police. OK?

*Id*. at 5 (quotation marks omitted).

Veryzer again asked Plaintiff for her driver's license. As she had rented the car under her birth name, she provided him with the Oregon driver's license bearing her birth name. He instructed her to exit her vehicle and gave her the choice of sitting with him in his squad car or standing on the road outside of his car; she chose the latter. Veryzer contacted Illinois State Police dispatcher Michael Reittinger and asked him to run an Oregon criminal history using Plaintiff's birth name. The dispatcher looked up the driving record for the wrong person—Lindsay Kenyon.[3] Kenyon had had her commercial driver's license ("CDL") suspended, although no warrant for her arrest had been issued. Based on this information, the dispatcher told Veryzer that Plaintiff had a suspended CDL.

Veryzer knew that Plaintiff was not Lindsay Kenyon: Plaintiff's Oregon driver's license says that she "stands 5 feet, 4 inches tall, she weighs 110 pounds, she was born in 1981, she

---

[3] Plaintiff "has never used or been known as Lindsay Kenyon." Am. Compl. 3.

resides in Clackamas, Oregon, and her seven digit driver license number is alpha-numeric and it ends in 889," while Kenyon's records state "that she stands 5 feet, 1 inch tall, she weighs 250 pounds, she was born in 1982, she resides in Junction City, Oregon, and her seven digit driver's license number is numeric-only and it ends in 005." *Id*. at 5–6. However, he "exited his squad car, walked to Plaintiff, grabbed her wrist, brought her to the front of his squad car, and bent her over the hood of the car," placing her under arrest for driving while suspended. *Id*. at 6. While she was being arrested, Plaintiff told Veryzer that he was hurting her. She also told him that her license was not suspended.

By that time, two Geneseo police officers had arrived in order to assist Veryzer, at his request. While Veryzer searched Plaintiff, she explained the details of her name change and reiterated that her license was not suspended. Veryzer "became defensive and annoyed" and told her he was going to arrest her for obstruction because she gave him a false name. *Id*. at 6–7. Plaintiff said, "Why are you being such a . . . ," and Veryzer responded:

> I'm not. You should ask yourself why *you're being such a* . . . something. I'm a normal person. We treat people the way you're supposed to be treated. Unfortunately *you don't know how to do that*, so . . . that's the way it is.

*Id*. at 7. Plaintiff continued to protest that her license was not suspended, and he "became more exasperated and annoyed with her" and began to complain about Plaintiff to one of the Geneseo police officers. *Id*. One of the Geneseo officers put Plaintiff into his police car, and Plaintiff's car was searched a couple times.

Plaintiff complained that her handcuffs were too tight. When this was reported to Veryzer, he responded, "No, they're not. It's because she's got small wrists." *Id*. at 9 (quotation marks omitted). Plaintiff was moved from the Geneseo officer's car to Veryzer's squad car, and the Geneseo officers left.

Veryzer then asked the dispatcher to check Plaintiff's Pennsylvania driver's license. The dispatcher told him that the license was a "valid Pennsylvania duplicate." *Id*. (quotation marks omitted). Veryzer asked the dispatcher for a tow truck to impound Plaintiff's vehicle.

Plaintiff continued to complain to Veryzer that her handcuffs were too tight. After about seven minutes, Veryzer moved the handcuffs to the front of Plaintiff's body. He also made them tighter. When Plaintiff complained again that the handcuffs were hurting her, Veryzer said, "They're fine. Oh my G*d. See? That's what happens when you're nice to someone." *Id*. at 10. He then turned on his car's entertainment system radio. The tow truck arrived, and Plaintiff's vehicle was impounded.

### III.   Henry County Jail

Veryzer and Plaintiff arrived at the Henry County Jail. Before he surrendered her to the jail, he called the dispatcher again, who confirmed that the name on the driver's license he had referred to earlier was Lindsay Marie Kenyon. Veryzer told the dispatcher that the arrest "w[ould] be a lockup." *Id*. at 11 (quotation marks omitted). He then surrendered Plaintiff to the jail and submitted the driving-while-suspended charges to the Henry County State's Attorney.

Veryzer prepared a field report that same day documenting his arrest of Plaintiff. The report does not mention his contact with the dispatcher while at the jail.

### IV.   The Criminal Prosecution

On January 23, 2020, the State's Attorney initiated three consolidated criminal prosecutions against Plaintiff on the charges of 1) class A misdemeanor, driving on a suspended license, 2) petty offense, driving 1 to 10 miles per hour above the posted speed limit, and 3) petty offense, driving without complying with the seatbelt requirement. Plaintiff was arraigned on

January 24, 2020 and pleaded not guilty, then was released on bond. She had no access to her rental car and was not able to determine if all of her property had been returned to her.

The State then filed a motion to dismiss all of the charges against her. The charges were dismissed by *nolle prosequi*[4] on January 28, 2020. Pl.'s Resp. Mot. Dismiss 3, ECF No. 43.[5] The charges were not reinstated, nor were any charges filed against Plaintiff for having two driver's licenses, for renting a car under her birth name, or for giving Veryzer her Oregon driver's license when asked for her license.

Veryzer then prepared a supplemental field report in which he wrote that he had reviewed all documents and records regarding Plaintiff's arrest and concluded that Plaintiff "should not have been arrested for driving while license suspended." Am. Compl. 13 (quotation marks omitted).

V.  **Procedural History**

Plaintiff initiated this suit on October 26, 2020, against Veryzer, Geneseo Police Officer Elliott R. Vermeire, Reittinger, and Assistant State's Attorney Grace A. Simpson. Compl., ECF No. 1. On April 12, 2021, with the permission of the Court, *see* Feb. 8, 2021 Text Order, Plaintiff filed an amended complaint, naming Veryzer as the sole Defendant. Am. Compl. In the amended complaint, Plaintiff brings a 42 U.S.C. § 1983 claim alleging a Fourth Amendment violation arising from the excessive force used during her arrest (Count I), a § 1983 claim alleging a Fourth Amendment violation arising from the first search of the vehicle (Count II),

---

[4] "A *nolle prosequi* is a formal entry of record whereby the prosecuting attorney declares that he is unwilling to prosecute a case." *Ferguson v. City of Chicago*, 820 N.E.2d 455, 460 (Ill. 2004).
[5] Although Plaintiff does not explicitly specify in her amended complaint that the charges brought against her were dismissed via *nolle prosequi*, *see* Am. Compl. 13, 20, she states in her response to the motion to dismiss that "all charges against [her] were dismissed by *nolle prosequi*," Pl.'s Resp. Mot. Dismiss 3. *See Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992) ("[A] plaintiff is free, in defending against a motion to dismiss, to allege without evidentiary support any facts he pleases that are consistent with the complaint, in order to show that there is a state of facts within the scope of the complaint that if proved . . . would entitle him to judgment.").

§ 1983 claim alleging a Fourth Amendment violation arising from the second search of the vehicle (Count III), and a state law claim for the tort of malicious prosecution (Count IV). Am. Compl. 14–23. Veryzer then filed a motion to dismiss Count IV for failure to state a claim. Def.'s Mot. Dismiss 2. Plaintiff opposes the motion. Pl.'s Resp. Mot. Dismiss 1.

## DISCUSSION

### I. Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At the motion to dismiss stage, the key inquiry is whether the complaint is "sufficient to provide the defendant with 'fair notice' of the plaintiff's claim and its basis." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). While "detailed factual allegations are unnecessary, the complaint must have 'enough facts to state a claim to relief that is plausible on its face.'" *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When deciding on a motion to dismiss, the court must take "[t]he complaint's well-pleaded factual allegations, though not its legal conclusions, . . . [as] true," *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013), and "draw all inferences in the light most favorable to the nonmoving party," *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

## II. Analysis

Count IV of the amended complaint alleges malicious prosecution under Illinois state law: Plaintiff asserts that Veryzer caused a criminal proceeding for driving on a suspended license to be initiated against her by arresting her and charging her without probable cause and with malice. Am. Compl. 20–23. To state a claim for malicious prosecution, a plaintiff must allege "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Joiner v. Benton Cmty. Bank*, 411 N.E.2d 229, 232 (Ill. 1980) (quotation marks omitted). Veryzer argues that Plaintiff has failed to state a claim for three reasons: first, she fails to allege that the charges against her were dismissed for reasons consistent with her innocence; second, he had probable cause to arrest her; and third, she fails to allege facts showing that he acted with malice. Def.'s Mem. Supp. Mot. Dismiss 4, ECF No. 39. Each argument will be addressed in turn, beginning with whether Plaintiff has adequately alleged a lack of probable cause.

### a. Probable Cause

"Probable cause is a state of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged." *Fabiano v. City of Palos Hills*, 784 N.E.2d 258, 266 (Ill. App. Ct. 2002). If an investigating officer acted with probable cause when pursing criminal charges, he is immune from a malicious prosecution suit. *Johnson v. Saville*, 575 F.3d 656, 659 (7th Cir. 2009). "Courts assess probable cause based on the totality of the circumstances." *Id*. at 662 (quotation marks omitted).

Veryzer argues that he "had probable cause to believe a crime had been committed" because Plaintiff produced two different driver's licenses during the course of the traffic stop—from which he could have suspected she had a fictitious driver's license—and because the dispatcher told him Plaintiff had a suspended CDL. Def.'s Mem. Supp. Mot. Dismiss 6. Veryzer's argument as to the multiple licenses fails, as "probable cause to believe an individual committed one crime . . . does not foreclose a malicious prosecution claim for additionally prosecuting the individual on a separate charge," *Holmes v. Vill. of Hoffman Est.*, 511 F.3d 673, 682 (7th Cir. 2007), and Veryzer concedes he did not "ultimately . . . charge[] Plaintiff with providing false information about her driver's licenses." Def.'s Mem. Supp. Mot. Dismiss 6.[6] Plaintiff's malicious prosecution claim is brought solely in regard to the charge of driving on a suspended license. *See* Am. Compl. 20–23.

Furthermore, Plaintiff alleges facts which, taken as true, allow the Court to infer that Veryzer had no basis for suspecting that Plaintiff could be guilty of driving on a suspended license. According to the amended complaint, the physical description of Plaintiff on her Oregon driver's license is distinct enough from the physical description of Lindsay Kenyon, Am. Compl. 5–6, that Veryzer would have had no reason to think they were the same person. Further, at the jail, Plaintiff claims, before Veryzer surrendered Plaintiff, he called the dispatcher again, who confirmed that the identity of the driver with the suspended CDL was Lindsay Marie Kenyon—not Plaintiff, who has never used the name Lindsay Kenyon. *Id*. at 3, 11. And it was allegedly after that conversation that Veryzer submitted the driving-while-suspended charges to the State's

---

[6] "In this respect, a malicious prosecution claim is treated differently from one for false arrest: whereas probable cause to believe that a person has committed *any* crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause, probable cause as to one charge will not bar a malicious prosecution claim based on a second, distinct charge as to which probable cause was lacking." *Holmes*, 511 F.3d at 682 (citations omitted).

Attorney. *Id*. at 11. Taking these allegations as true, Veryzer knew it was Lindsay Kenyon, not Plaintiff, with the suspended CDL, and thus that Plaintiff was not guilty of the crime with which Veryzer charged her. At this stage, then, the Court finds that Plaintiff has adequately alleged that Veryzer lacked probable cause to arrest and charge her with driving on a suspended license.

    **b. Malice**

"Malice, as an element of malicious prosecution, is defined as the actuation of a prosecution for an improper motive." *Mack v. First Sec. Bank of Chi.*, 511 N.E.2d 714, 717 (Ill. App. Ct. 1987). "An improper motive for a prosecution is any reason other than to bring the party to justice." *Id*. In this context, malice "does not necessarily mean personal ill-will, spite or hatred toward the person prosecuted." *Turner v. City of Chicago*, 415 N.E.2d 481, 487 (Ill. App. Ct. 1980).

Veryzer argues that Plaintiff has failed to allege he acted with malice; rather, Veryzer contends, Plaintiff alleges only "defensive behavior and . . . expressions of annoyance with Plaintiff," which is "simply insufficient to support a claim for malice." Def.'s Mem. Supp. Mot. Dismiss 6–7 (quotation marks omitted). The Court disagrees. It has found that Plaintiff adequately alleges that Veryzer lacked probable cause to arrest and charge Plaintiff with driving on a suspended license, *see supra* Section II(a), and Plaintiff alleges that the real reason he did so was his annoyance with her, *see* Am. Compl. 2 ("Veryzer already knew Plaintiff did not have a CDL, but he was so annoyed with Plaintiff that he arrested her anyway and he charged her with driving on a suspended license."). The allegations throughout the amended complaint support Veryzer's continued irritation with Plaintiff throughout their interaction on January 23, 2020. *See id.* at 4–5 (alleging that Veryzer "became defensive" and said "I'm not exactly sure *what's wrong with you* right now" when Plaintiff began recording him and said "[o]fficers are

9

criminals" (quotation marks omitted)); *id*. at 6–7 (alleging that Veryzer "became defensive and annoyed" when Plaintiff explained her name change and said that her license was not suspended); *id*. at 7 (alleging that in response to Plaintiff saying "[w]hy are you being such a . . . ," Veryzer said "I'm not. You should ask yourself why you're being such a . . . something. I'm a normal person. We treat people the way you're supposed to be treated. Unfortunately *you don't know how to do that*, so . . . that's the way it is"); *id*. (alleging that when Plaintiff continued to insist that her license was not suspended, he "became more exasperated and annoyed with her," complained about Plaintiff to one of the Geneseo officers, and said "Oh my G-d!" (quotation marks omitted)); *id*. at 8 (alleging that Veryzer said Plaintiff "tried to intimidate [him]" (quotation marks omitted)); *id*. at 10 (alleging that, after Veryzer had repositioned Plaintiff's handcuffs and Plaintiff told him they were still hurting her, he said, "They're fine. Oh my G*d. See? That's what happens when you're nice to someone").

The Court finds that these allegations adequately support that Veryzer, knowing that Plaintiff did not have a suspended license and that he did not have a basis to arrest and charge her with driving on a suspended license, chose to arrest and charge her with that offense anyway because he was irritated and annoyed with Plaintiff's actions and statements. This is "an improper motive" sufficient to show malice for the purposes of a malicious prosecution claim. *See Mack*, 511 N.E.2d at 717. As such, the Court finds that Plaintiff has plausibly alleged that Veryzer acted with malice.

### c. Favorable Termination

Whether the suit underlying a malicious prosecution claim ended in the plaintiff's favor is "determined not by the form or title given to the disposition of the prior proceeding, but by the circumstances under which that disposition is obtained." *Cult Awareness Network v. Church of*

10

*Scientology Int'l*, 685 N.E.2d 1347, 1352–53 (emphasis omitted).  To be considered favorable to the plaintiff, the prior proceedings must have been "terminated in a manner . . . indicative of the innocence of the accused."  *Joiner*, 411 N.E.2d at 232.  However, "[w]here the case is disposed of in a manner that leaves the question of the accused's innocence unresolved, there generally can be no malicious prosecution claim by the accused."  *Dobiecki v. Palacios*, 829 F. Supp. 229, 235 (N.D. Ill. 1993).

In *Swick v. Liautaud*, 662 N.E.2d 1238 (Ill. 1996), the Illinois Supreme Court addressed for the first time whether the dismissal of a criminal case through a *nolle prosequi* constitutes a termination in the criminal defendant's favor.  *See id.* at 1242.  It concluded that "a criminal proceeding has been terminated in favor of the accused when a prosecutor formally abandons the proceeding via a *nolle prosequi*, unless the abandonment is for reasons not indicative of the innocence of the accused."  *Id.* at 1242–43.  Because the case had proceeded to trial before the lower court, the Illinois Supreme Court addressed the parties' burdens at that procedural posture, pronouncing that "[o]nly when a plaintiff establishes that the *nolle prosequi* was entered for reasons consistent with his innocence does the plaintiff meet his burden of proof."  *Id.* at 1243.

Citing *Swick*, Veryzer contends that Plaintiff has not adequately alleged that the criminal case against her for driving on a suspended license terminated in a manner indicative of her innocence.  Def.'s Mem. Supp. Mot. Dismiss 5.  In response, Plaintiff argues that *Swick* applies only to the plaintiff's burden of proof at trial and that "[b]ecause the sole point in Veryzer's first argument is that *Swick* applies to require dismissal, and because *Swick* is inapplicable" to a motion to dismiss, Veryzer's favorable termination argument must be rejected wholesale.  Pl.'s Resp. Mot. Dismiss 4–5. The Court finds that Plaintiff's argument misses the point: while it is true that *Swick* involved a malicious prosecution claim that had proceeded to trial, it was far from

11

the first case to hold that a malicious prosecution claim requires termination of the underlying suit in a manner indicative of the plaintiff's innocence. Indeed, in *Joiner*, to which *Swick* itself cites, *see Swick*, 662 N.E.2d at 1243, the Illinois Supreme Court referred to the requirement that a malicious prosecution suit be predicated upon proceedings that terminated in a manner indicative of the innocence of the accused as "settled law." *Joiner*, 411 N.E.2d at 232 (stating that "in order to state a cause of action for malicious prosecution, [a plaintiff] must *allege facts* showing . . . the termination of the proceeding in favor of the plaintiff" (emphasis added) (quotation marks omitted)). And post-*Swick*, the Illinois Supreme Court has cited that case's articulation of the favorable termination requirement when addressing a suit at the motion to dismiss stage. *See Cult Awareness*, 685 N.E.2d at 1354 (looking to *Swick* to develop similar guidelines for evaluating malicious prosecution suits predicated on prior civil proceedings and applying those guidelines to a motion to dismiss). *Swick*'s innovation was addressing whether a *nolle prosequi* constituted a favorable termination, *see Swick*, 662 N.E.2d at 1242–43, but simply because it addressed the plaintiff's burden at trial does not relieve Plaintiff from the responsibility of adequately alleging termination of the underlying suit in a manner indicative of innocence.[7]

---

[7] Plaintiff cites to one district court case from the Northern District of Illinois, Pl.'s Resp. Mot. Dismiss 5, which held that it was sufficient for the plaintiffs to "allege that the charges were dismissed by the prosecutor and that this constituted a termination in their favor" and that requiring them to plead facts showing that the underlying suit was dismissed for reasons consistent with their innocence would, "in essence, require a plaintiff to meet his or her burden of proof at the pleading stage," *Woodard v. Am. Fam. Mut. Ins. Co.*, 950 F. Supp. 1382, 1387 (N.D. Ill. 1997). But there are district courts in the Seventh Circuit, including this Court, who have evaluated malicious prosecution claims more recently and under modern pleading standards and who looked instead to whether the complaint plausibly pleaded termination in a manner indicative of innocence. *See, e.g.*, *Heidelberg v. Manias*, 503 F. Supp. 3d 758, 795 (C.D. Ill. 2020) (dismissing a malicious prosecution claim because the plaintiff failed to adequately allege that the underlying criminal proceedings were terminated in his favor); *Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 794 (N.D. Ill. 2013) (evaluating "whether [the plaintiff] ha[d] failed to adequately allege that the *nolle prosequi* dismissals of the criminal proceedings against him were indicative of his innocence").

Regardless, the Court finds that Plaintiff has plausibly pleaded termination of the criminal suit in a manner indicative of Plaintiff's innocence. As the Court found above, the amended complaint adequately alleges that Veryzer lacked probable cause to arrest and charge Plaintiff with driving on a suspended license. *See supra* Section II(a); *see Cult Awareness*, 685 N.E.2d at 1353 ("[A] favorable termination is limited to only those legal dispositions that can give rise to an inference of lack of probable cause."). Plaintiff further states in the amended complaint that the driving-while-suspended charges were never reinstated against her—despite the passage of some fourteen months between the charge's dismissal and the filing of the amended complaint—and that Veryzer acknowledged that Plaintiff should not have been arrested for driving on a suspended license. Am. Compl. 13. These allegations are sufficient for the Court to infer that the charge was dismissed because it was without merit. *See Vesely*, 762 F.3d at 664 (noting that at the motion to dismiss stage, the court must "draw all inferences in the light most favorable to the nonmoving party"). As such, Plaintiff has adequately pleaded that the criminal proceedings underlying her malicious prosecution claim terminated in her favor. *See Velez v. Avis Rent A Car Sys., Inc.*, 721 N.E.2d 652, 656–57 (Ill. App. Ct. 1999) (holding that the defendant's refusal to proceed to trial despite ample opportunity to do so "indicate[d] that the disposition was premised upon a lack of probable cause and was indicative of the innocence of the plaintiff"); *Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 794 (N.D. Ill. 2013) (finding that the plaintiff had plausibly alleged a favorable termination where "the context ma[de] clear that the prosecutor dropped the charges against [the plaintiff] because new evidence had exonerated him").

Veryzer's motion to dismiss Count IV of the amended complaint is therefore denied.

13

## CONCLUSION

Accordingly, Defendant Sean C. Veryzer's partial Motion to Dismiss, ECF No. 38, is DENIED.

Entered this 31st day of March, 2022.

s/ Sara Darrow<br>
SARA DARROW<br>
CHIEF UNITED STATES DISTRICT JUDGE